**Barbara K. GLYMPH, Appellant,**

v.

**SPARTANBURG GENERAL HOSPITAL, Appellee.**

No. 84–2153.

United States Court of Appeals, Fourth Circuit.

Argued July 29, 1985.

Decided Feb. 18, 1986.

Michael F. Talley (Talley & Lewis on brief) for appellant.

Vance J. Bettis (Stephen T. Savitz; Gignilliat & Savitz, on brief) for appellee.

Before WIDENER, CHAPMAN and SNEEDEN, Circuit Judges.

WIDENER, Circuit Judge:

Barbara K. Glymph appeals the district court's decision in favor of the defendant Spartanburg General Hospital (hospital) in her suit claiming that the hospital discriminated against her because of her race by forcing her to resign her position as head nurse in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq; The Civil Rights Act of 1866, 42 U.S.C. § 1981; and the Fourteenth Amendment to the United States Constitution. She also appeals the order of the district court requiring her to pay the defendant's attorneys' fees in the amount of $18,000. While we affirm the district court's conclusion that the hospital had not unlawfully discriminated against Mrs. Glymph, we find error in its order requiring her to pay the hospital's attorneys' fees.

Mrs. Glymph was hired by the hospital in 1964 as a staff nurse. In 1970, she was promoted to the position of head nurse of 6–center, a floor within the hospital. She held this position until September 1981,

when she resigned that position and returned to her former job as staff nurse.

The circumstances surrounding Mrs. Glymph's resignation as head nurse, or demotion from head nurse to staff nurse, as the case may be, serve as the basis of this suit: she contends that she was forced to resign the head nurse position because of her race. At trial, Mrs. Glymph presented evidence that prior to her demotion she had received no reprimands. Instead, she had received only favorable evaluations. Early in 1981, she had received an average rating in her job performance evaluation by her supervisor Patricia Caldwell. In August 1981, Mrs. Caldwell informed Mrs. Glymph for the first time that her management performance was deficient. The two met several times in August to discuss Mrs. Glymph's problems. Mrs. Caldwell also had informed the hospital's Vice President for Patient Services, Marilyn Lemkau, that Mrs. Glymph's performance had been a problem for months, while Mrs. Caldwell had in fact been telling Mrs. Glymph that she (Mrs. Glymph) was the only head nurse who was not giving her (Mrs. Caldwell) any problems.

Mrs. Glymph met with Mrs. Caldwell and Mrs. Lemkau on September 2, 1981 to discuss her performance. At that meeting, Mrs. Lemkau told Mrs. Caldwell that she should find herself another head nurse to replace Mrs. Glymph. Thereafter, Mrs. Glymph resigned her position as head nurse. Although Mrs. Glymph tried to rescind her resignation, she was not allowed to do so. Following Mrs. Glymph's resignation, a white nurse was promoted to the position of head nurse. Mrs. Glymph also introduced evidence showing that Mrs. Caldwell had previously had problems with another black nurse who no longer worked at the hospital and that the conditions placed upon Mrs. Glymph's conversion to the new system were unreasonable. See footnote 1, infra.

The hospital moved for an involuntary dismissal under Fed.R.Civ.Proc. 41(b) following Mrs. Glymph's case-in-chief which was denied. It then presented its evidence contradicting Mrs. Glymph's version of the affair.

The hospital's evidence showed that Mrs. Glymph voluntarily resigned from the head nurse position because she could not perform the new tasks assigned to that job under a hospital reorganization.[1] The hospital provided workshops for its head nurses to assist them in learning these new tasks. Six white head nurses could not perform these new tasks and were asked to resign. Mrs. Glymph had difficulty in mastering the new job requirements. Mrs. Caldwell met with her on several occasions in an effort to identify Mrs. Glymph's managerial weaknesses and to attempt to remedy them. Like other similarly situated head nurses, Mrs. Glymph was to develop written goals and objectives for improving her management skills. Upon feeling that Mrs. Glymph was not making an effort to perform her new tasks, Mrs. Caldwell arranged a meeting with Mrs. Lemkau on September 2, 1981. At that meeting, Glymph announced that she was "burned out" as a head nurse and wanted to resign. Upon being advised by Mrs. Lemkau to think over such a decision overnight, Mrs. Glymph the next day reaffirmed her desire to return to her old job as a staff nurse. A few weeks later, Mrs. Glymph telephoned Mrs. Lemkau about rescinding her resignation. A meeting was arranged and Mrs. Glymph was advised to prepare a plan for the meeting. Mrs. Glymph did not prepare such a plan and the meeting did not take place. Mrs. Glymph later reaffirmed her desire to resign from the head nurse position.

After hearing all of the evidence, the trial court concluded that Mrs. Glymph voluntarily resigned her position as head nurse. The court found that in 1979 and 1980 the hospital changed the role of its

1. In late 1979 and early 1980, the hospital restructured the responsibilities of its head nurses. The head nurses became unit managers instead of clinical nurses providing patient care as they previously had been. When Mrs. Glymph had become a head nurse, the hospital operated under its old system and she primarily performed or supervised direct patient care.

head nurses from providing direct patient care to performing managerial duties. It accepted the testimony of Mrs. Caldwell that she observed that Mrs. Glymph was having difficulties adjusting to these managerial tasks, that she met with Mrs. Glymph several times in an effort to remedy Mrs. Glymph's managerial deficiencies, and that she and Mrs. Lemkau remained willing to assist Mrs. Glymph in adapting to the role of head nurse at the hospital. Mrs. Glymph, however, it found, chose to resign from that position. Later, Mrs. Glymph inquired about rescinding her resignation. After several discussions with Mrs. Caldwell, Mrs. Lemkau and Sam Feemster, the hospital's personnel director, however, Mrs. Glymph decided that she was "tired of it all" and intended to leave the head nurse position and become a staff nurse. Accordingly, the court found that the hospital had not discriminated against Mrs. Glymph, and entered judgment for the hospital.

■ We find no error in the district court's decision that the hospital did not discriminate against Mrs. Glymph. The court made no mistake in law, and it simply gave greater weight to the hospital's evidence than to that of the plaintiff. Its findings of fact are not clearly erroneous upon a review of the record. *Anderson v. City of Bessemer City, N.C.*, —— U.S. ——, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

After deciding that the hospital had not discriminated, the district court ordered Mrs. Glymph to pay the hospital's attorneys' fees. The court based that order upon a finding that Mrs. Glymph produced no credible evidence that she had been discriminated against and that she knew from the outset of the litigation that she had no evidence to support her claim. The district court concluded that Mrs. Glymph's claims were frivolous, unreasonable and without foundation, thus serving as the basis for an award of attorneys' fees to the prevailing defendant under *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978).

■ Under proper circumstances, a district court can award attorneys' fees to a prevailing defendant in Title VII actions. A district court has the discretion to award such fees only upon a finding that the plaintiff's action was "frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment*, supra, 434 U.S. at 421, 98 S.Ct. at 700. Such a finding cannot result solely because the plaintiff did not ultimately prevail on the merits of the lawsuit. Since the results of many lawsuits are not predictable, plaintiffs are not to be discouraged from bringing suit just because it is less than airtight. *Christiansburg Garment*, supra, 434 U.S. at 422, 98 S.Ct. at 700.

■ This court has recognized the chilling effect such awards can have on Title VII plaintiffs. *Arnold v. Burger King Corp.*, 719 F.2d 63 (4th Cir.1983). District courts should award such fees sparingly and not based upon post hoc reasoning which presumes such an award based upon the outcome of the lawsuit. *Arnold*, supra, 719 F.2d at 65.

■ The district court awarded attorneys' fees to the hospital on the grounds that Mrs. Glymph's claim was frivolous, unreasonable and without foundation. After evaluating the entire record, however, we conclude that the district court's finding was not based upon the reasonableness of the claims as they existed at the time of trial. We therefore conclude that the district court abused its discretion in the award of the fees.

The district court's finding that Mrs. Glymph's claims were frivolous is undercut to some extent by that court's handling of the case itself. The hospital had moved prior to trial for summary judgment. After a recommendation from the magistrate to deny the motion as to the Title VII claim and grant the motion as to the § 1981 and Fourteenth Amendment claims, the court denied the motion for summary judgment as to all the claims. The case then proceeded to trial. After presentation of Mrs. Glymph's evidence, the hospital moved for

an involuntary dismissal of the case. The court summarily denied that motion. The hospital then presented its own evidence through its witnesses. After the trial ended, the court did not make an immediate ruling. Instead, it took the matter under consideration, and some weeks later filed its opinion and entered judgment in the case. In that fifteen page opinion, the court thoroughly considered Mrs. Glymph's claims and decided against her on the merits of those claims.

Such a careful and studied consideration of Mrs. Glymph's claim of racial discrimination may tend to show that the district court at the time did not believe the matter to be frivolous. While we do not think the denial of summary judgment in favor of the hospital and the like denial of its motion to dismiss at the close of plaintiff's evidence are binding decisions that the plaintiff had made out at least a prima facie case, especially without explicit findings which are absent here, it is arguable that such is implicit in those rulings.

More persuasive to us than the denial of those motions is Mrs. Glymph's evidence. She offered evidence which tended to show that she had been a competent head nurse with acceptable performance evaluation, that she was making an effort to adjust to the new system, that unreasonable conditions were placed upon her adjustment, that she only resigned as head nurse upon being told that the decision to replace her had already been made, and that she was replaced by a white employee. If the case had stopped there, the district court would have been hard pressed, even if possible at all, to decide the case in favor of the hospital, and we are of opinion that the case made out by Mrs. Glymph was not frivolous. Neither was it unreasonable or without foundation. Her case depended almost wholly on her oral testimony to the effect that she was forced to resign, and while it is true that the hospital presented a strong defense that she voluntarily resigned, which was accepted by the district court, we do not think that such cases should subject unsuccessful plaintiffs to the award of attorneys' fees under *Christiansburg Garment Co.*

The judgment of the district court in favor of the hospital on the merits of the case is accordingly affirmed, and the judgment of the district court in favor of the hospital with respect to attorneys' fees is accordingly reversed.

AFFIRMED IN PART.

REVERSED IN PART.