PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

*Plaintiff-Appellee,*

v.

No. 10-1756

GREAT STEAKS, INCORPORATED,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., Chief District Judge.
(1:05-cv-00744-JAB-WWD)

Argued: October 28, 2011

Decided: January 26, 2012

Before NIEMEYER, DUNCAN, and FLOYD,
Circuit Judges.

Affirmed by published opinion. Judge Floyd wrote the opinion, in which Judge Niemeyer and Judge Duncan joined.

**COUNSEL**

**ARGUED:** Fred Thurman Hamlet, Sr., Greensboro, North Carolina; Daniel Charles Nash, MORGAN, HERRING, MORGAN, GREEN & ROSENBLUTT, LLC, High Point, North Carolina, for Appellant. Elizabeth Ellen Theran, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee. **ON BRIEF:** P. David Lopez, General Counsel, Vincent J. Blackwood, Acting Associate General Counsel, Lorraine C. Davis, Assistant General Counsel, U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Appellee.

---

**OPINION**

FLOYD, Circuit Judge:

This appeal arises from an unsuccessful Title VII action brought by the Equal Employment Opportunity Commission (EEOC) against Great Steaks, Inc. The EEOC accused Great Steaks of subjecting female employees to a sexually hostile work environment. Although at the start of the case the EEOC asserted its claim on behalf of multiple claimants, that number diminished to one by trial. After a three-day trial, the jury rendered a verdict in Great Steaks' favor. Great Steaks subsequently moved for an award of attorneys' fees, maintaining it was entitled to such an award under the following three statutory provisions: Title VII's fee-shifting provision, 42 U.S.C. § 2000e-5(k); the Equal Access to Justice Act's (EAJA) mandatory fee provision, 28 U.S.C. § 2412(d); and 28 U.S.C. § 1927. The district court denied the motion for attorneys' fees in its entirety. On appeal, Great Steaks contends that the district court erred in doing so. We affirm.

## I.

## A.

On February 14, 2005, Dorathy Carter filed a charge of discrimination against Austin's Restaurant with the EEOC. Carter, a former employee of Austin's Restaurant, claimed that during her employment the owner, John Pantazis, sexually harassed her. The harassment, she alleged, began on January 10, 2005, and lasted until February 8, 2005. She mentioned specifically that he subjected her to sexual comments and touching, and that he persisted even after she advised him that she did not welcome his advances. The day after Carter filed the charge, Thomas Colclough, the acting director of the EEOC's local office, issued a notice of charge of discrimination on behalf of the EEOC. He provided Mr. Pantazis with a copy of the charge and requested a position statement and certain relevant information from Austin's Restaurant.

Bessie Pantazis, Mr. Pantazis's daughter, submitted a position statement dated March 20, 2005. In the position statement, she asserted that she co-owned Austin's Restaurant with her father. She indicated that the name of the restaurant was actually Great Steaks, Inc., but that it did business as Austin's Restaurant. She also mentioned that Austin's Restaurant had two locations, one in High Point, North Carolina, and another in Greensboro, North Carolina. But, when listing an address, she provided only the address of the Greensboro restaurant. According to Ms. Pantazis, Carter worked one day in the High Point location before transferring to the Greensboro location when it opened on January 25, 2005. Throughout the statement, Ms. Pantazis denied that Mr. Pantazis subjected Carter, or anyone else, to sexual harassment and insisted that Carter was fired for "calling in too many times at the last minute." Ms. Pantazis hypothesized that a desire for money and for revenge for the firing motivated Carter's charge.

Colclough subsequently conducted an investigation on behalf of the EEOC. An affidavit that the EEOC filed with the

district court describes his efforts. During the investigation, he visited Austin's Restaurant in Greensboro and interviewed Mr. Pantazis. He also interviewed a number of female waitresses and hostesses who claimed Mr. Pantazis had sexually harassed them. According to Colclough, his investigation revealed that either Mr. Pantazis or Ms. Pantazis directly hired the majority of these women. Most of them, Colclough stated, were hired for the Greensboro location, but they trained in High Point, and some worked in the High Point location before transferring to Greensboro. He also noted that Mr. Pantazis managed and helped supervise the waitresses at the High Point location before the Greensboro location opened.

On May 31, 2005, Colclough issued a letter of determination on the merits of the charge of discrimination. In it, he concluded evidence existed establishing that Mr. Pantazis sexually harassed Carter and a class of similarly situated female employees. Colclough also noted the existence of evidence indicating that several female class members were forced to resign because of the sexual harassment. As a result, he determined evidence existed that established violations of Title VII. He therefore invited the parties to enter into the conciliation process. In his affidavit, Colclough attested that he informed the attorney representing Austin's Restaurant that conciliation would be on a class basis and would include both of the restaurant's locations.

The parties held a conciliation conference on June 22, 2005. Ms. Pantazis and the attorney for Austin's Restaurant attended on behalf of the restaurant. Conciliation was unsuccessful, and the EEOC issued a notice of conciliation failure on June 29, 2005. According to the EEOC, it subsequently discovered that Clipper Seafood Restaurant, Inc., was the corporate entity that owned Austin's Restaurant's High Point location.

### B.

The EEOC instituted this action in federal court by filing a complaint on August 26, 2005. The complaint named two defendants: Great Steaks and Clipper Seafood, doing business as Austin's Restaurant. The EEOC maintained Great Steaks did business in Greensboro and that Clipper Seafood did business in High Point. It asserted, however, that they "jointly operated" Austin's Restaurant's two locations as "joint employers" or "an integrated business enterprise." The EEOC alleged that Great Steaks and Clipper Seafood, through their male co-owner, subjected Carter and other similarly situated female employees to a sexually hostile work environment and that the employment conditions caused some of the female employees to resign. It sought injunctive relief, monetary relief for the aggrieved claimants, and its costs in bringing the action.

Great Steaks and Clipper Seafood answered on December 5, 2005, and simultaneously moved to dismiss the complaint. In their motion, they asserted that the district court lacked subject-matter jurisdiction over Great Steaks. They further claimed that the complaint failed to state a claim of relief against Clipper Seafood, insisting that Clipper Seafood and Great Steaks were separate entities and that the EEOC had failed to identify any employees of Clipper Seafood who were harassed. The EEOC filed a response opposing the motion and provided Colclough's affidavit in support.

The district court referred the motion to dismiss to a magistrate judge, who subsequently held a hearing. At the hearing, the magistrate judge granted a motion for discovery made by the EEOC and stayed the motion to dismiss. He then entered an order bifurcating discovery into two phases. The first phase dealt with the substantive claims and the issues raised by the motion to dismiss. The order expressly prohibited the parties from deposing unnamed class members without the court's leave during the first phase. It required, however, that the

EEOC disclose the identity of all individuals on whose behalf it was seeking relief at the conclusion of the first phase. The second phase of discovery, which was not to begin until the court had ruled on the motion to dismiss, would address the remaining discovery.

The parties proceeded with the first phase of discovery. Great Steaks attempted to depose Carter, but was unsuccessful. She ultimately ceased participation in the lawsuit during the summer of 2006. At the end of the first phase of discovery, the EEOC notified Great Steaks and Clipper Seafood that it was seeking relief on behalf of three individuals: Stephanie Jones, Alea Lovett, and Tricia Allen. This number of claimants was down from the seven or eight class members that the EEOC originally estimated. Allen soon thereafter ceased participation in the lawsuit as well, leaving Jones and Lovett as the only claimants.

Following the first phase of discovery, on December 21, 2006, the EEOC, Great Steaks, and Clipper Seafood filed a joint stipulation requesting dismissal of the claims against Clipper Seafood with prejudice. That same day, Great Steaks withdrew its motion to dismiss. As a result, at this point of the litigation, the case involved the EEOC asserting claims on behalf of Jones and Lovett against only Great Steaks.

The second phase of discovery then commenced. In August 2007, Great Steaks deposed Jones. During her deposition, she recalled her employment at Austin's Restaurant as a hostess and alleged that Mr. Pantazis made unwelcome sexual comments to her and touched her on her lower back and buttocks. She asserted that on multiple occasions he commented on her breasts while looking down her shirt, and she recounted that he once asked her if she wanted to have sex with him. She alleged various other sexually charged comments and solicitations made by Mr. Pantazis. Throughout the deposition, Great Steaks' attorney pressed her on purported inconsistencies

within her testimony as well as inconsistencies between her testimony and earlier statements.

That same month, Great Steaks deposed Lovett, but the deposition ended prematurely when Lovett, in response to questioning, announced she was finished. In December 2007, the EEOC notified Great Steaks that Lovett had ceased participation in the lawsuit, leaving Jones as the sole claimant on whose behalf the EEOC sought relief.

Great Steaks then moved for summary judgment. It included a memorandum of law in support of its motion and also attached affidavits from Mr. Pantazis and Heather Smith, Jones's coworker at Austin's Restaurant. In his affidavit, Mr. Pantazis disputed the allegations against him. Similarly, Smith attested to working side-by-side with Jones and asserted that she never saw any of the advances or heard any of the comments that Jones described in her deposition.

The EEOC opposed the summary judgment motion and moved to strike Great Steaks' supporting memorandum for using a font size smaller than the local rules allowed. The motions were referred to a magistrate judge, who denied the motion to strike and recommended denying the motion for summary judgment. In addressing the summary judgment motion, the magistrate judge recognized troubling aspects of Jones's testimony, including her foggy memory regarding dates and details, but noted that these were issues of credibility and weight for a jury to decide. The district court adopted the magistrate judge's recommendation and denied the motion for summary judgment.

## C.

The district court scheduled a jury trial to begin on October 5, 2009. About a month before trial, Great Steaks filed its pretrial disclosures, which were vast. In response to the pretrial disclosures, on September 28, 2009, the EEOC filed twelve

motions in limine. Great Steaks failed to file written responses to them.

Trial began as scheduled on October 5, 2009. Before impaneling the jury, the district court granted four of the motions in limine and deferred ruling on the others. The trial lasted three days. The EEOC offered Jones as a witness in its case-in-chief. At the close of the EEOC's case, Great Steaks moved for judgment as a matter of law, which the district court denied. Great Steaks renewed its motion at the close of its evidence. The district court again denied the motion and allowed the case to go to the jury. On October 7, 2009, the jury returned a verdict in Great Steaks' favor.

Two months later, Great Steaks moved for attorneys' fees pursuant to Title VII's fee-shifting provision in 42 U.S.C. § 2000e-5(k); the EAJA's mandatory fee provision in 28 U.S.C. § 2412(d); and 28 U.S.C. § 1927. The district court denied Great Steaks' motion for attorneys' fees on all grounds. In refusing an award of attorneys' fees under Title VII's fee-shifting provision, it determined that the EEOC's case was not frivolous, unreasonable, or without foundation. The court specifically noted that the EEOC's case raised justiciable issues of fact for a jury to decide and that it survived motions for summary judgment and judgment as a matter of law. The district court also determined that the EEOC's case was substantially justified and therefore Great Steaks was not entitled to an award under the EAJA. Finally, the court concluded that an award under § 1927 would be improper because the EEOC did not act in bad faith or vexatiously multiply the proceedings. Great Steaks timely noted this appeal of the district court's order.

## II.

We first address Great Steaks' contention that the district court erred by denying its motion for attorneys' fees under Title VII's fee-shifting provision. We review the district

court's denial of attorneys' fees under Title VII for abuse of discretion. *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 178 (4th Cir. 2009).

## A.

Title VII contains its own fee-shifting provision that allows district courts, in their discretion, to award reasonable attorneys' fees to prevailing parties in actions brought under it. 42 U.S.C. § 2000e-5(k). This provision provides as follows:

> In any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney's fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.

*Id.* Notably, this provision, by its terms, does not distinguish between prevailing plaintiffs and prevailing defendants. *See id.* Both may recover. *See EEOC v. Clay Printing Co.*, 13 F.3d 813, 817 (4th Cir. 1994). But the Supreme Court, in *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978), established a different, more stringent standard governing when prevailing defendants may recover as compared to prevailing plaintiffs. *See Clay Printing*, 13 F.3d at 817.

Prevailing plaintiffs in Title VII actions ordinarily are entitled to attorneys' fees unless special circumstances militate against such an award. *Christiansburg Garment*, 434 U.S. at 417. This generous standard effectuates Congress's intent for plaintiffs to serve as "'private attorney[s] general,' vindicating a policy that Congress considered of the highest priority." *Id.* at 416 (quoting *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 402 (1968)) (internal quotation marks omitted). It promotes the vigorous enforcement of Title VII by making it easier for plaintiffs of limited means to bring meritorious

actions. *Id.* at 420. Furthermore, when a court awards attorneys' fees to a prevailing plaintiff in a Title VII action, it renders this award "against a violator of federal law." *Id.* at 418. These policy considerations, however, do not apply in the context of prevailing defendants, so defendants may not avail themselves of the same generous standard set for prevailing plaintiffs. *See id.*

Separate policy considerations drove Congress's decision to allow prevailing defendants to recover attorneys' fees. *See id.* at 419-20. Congress desired "to protect defendants from burdensome litigation having no legal or factual basis." *Id.* at 420. Although Congress sought to encourage the vigorous prosecution of meritorious Title VII actions by making it easier to bring them, it also wanted to deter frivolous lawsuits. *See id.* To accommodate these competing considerations, the Supreme Court held in *Christiansburg Garment* that prevailing defendants may obtain attorneys' fees in a Title VII action only if the district court "finds that [the plaintiff's] claim was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* at 422. It clarified, however, that this standard did not require the defendant to demonstrate that the plaintiff brought the action in subjective bad faith. *Id.* at 421.

A finding of frivolousness, unreasonableness, or groundlessness cannot obtain simply because the "plaintiff did not ultimately prevail." *Id.* at 422. Such "*post hoc* reasoning" would "discourage all but the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate success." *Id.* at 421-22. Ultimately, it would undercut Congress's efforts in promoting the vigorous enforcement of Title VII by substantially increasing the risks inherent in bringing such claims. *Id.* at 422. For this reason, we have recognized that awarding attorneys' fees to a prevailing defendant is "a conservative tool, to be used sparingly in those cases [in] which the plaintiff presses a claim which he knew or should have known was groundless, frivolous, or unreasonable." *Arnold v. Burger*

*King Corp.*, 719 F.2d 63, 65 (4th Cir. 1983); *see also Glymph v. Spartanburg Gen. Hosp.*, 783 F.2d 476, 479 (4th Cir. 1986) ("District courts should award such fees sparingly . . . .").

These principles, we have noted, provide only general guidance. *Arnold*, 719 F.2d at 65. There is no set quantity of evidence separating claims that are frivolous, unreasonable, or groundless from those that are not. *Id.* We have eschewed such formalistic line drawing, and for good reason. *Id.* "The fixing of attorneys' fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action." *Id.* We thus accord great deference to the trial court's assessment of whether the plaintiff's claim was frivolous, unreasonable, or groundless.

### B.

Before turning to the merits of Great Steaks' contentions, we briefly address the parties' dispute concerning the extent to which the district court's denials of Great Steaks' summary judgment motion and motion for judgment as a matter of law should play a role, if any, in the determination of whether the EEOC's case was frivolous, unreasonable, or groundless. Great Steaks dismisses their significance. The EEOC, however, emphasizes that its case survived the motions as an indicator that it was not frivolous, unreasonable, or groundless.

We have recognized that the denial of a dispositive motion can be an appropriate consideration when determining whether a plaintiff's case was frivolous, unreasonable, or groundless. *See Glymph*, 783 F.2d at 479-80. But it does not necessarily yield such a determination. *See Introcaso v. Cunningham*, 857 F.2d 965, 967-68 (4th Cir. 1988); *see also Hutchinson v. Staton*, 994 F.2d 1076, 1081 (4th Cir. 1993) (applying *Introcaso* and holding that plaintiffs were liable for attorneys' fees even though their case survived motions to dismiss and for summary judgment). This is because,

"[a]lthough in some instances a frivolous case will be quickly revealed as such, it may sometimes be necessary to 'blow away the smoke screens the plaintiffs had thrown up' before the defendants may prevail." *Introcaso*, 857 F.2d at 967 (quoting *Hicks v. S. Md. Health Sys. Agency*, 805 F.2d 1165, 1167-68 (4th Cir. 1986)). Moreover, "it is possible for a plaintiff to establish a prima facie case which is weak but which is sufficient to survive a directed verdict, but which is nonetheless groundless in light of a defense readily apparent to the plaintiff from the outset of the litigation." *Id.* at 967-68.

We add, however, that the denial of a motion for judgment as a matter of law made at the close of all evidence is a particularly strong indicator that the plaintiff's case is not frivolous, unreasonable, or groundless. At that point, all of the evidence has been introduced as to both the claims and the defenses, and the district court must determine whether a legally sufficient evidentiary basis exists that would allow a reasonable jury to find for the plaintiff. *See* Fed. R. Civ. P. 50(a)(1). If the district court denies the motion, it signals that a jury could reasonably find for the plaintiff. Although we do not preclude their existence, we are hard-pressed to imagine circumstances where the district court could make this determination and nevertheless deem the plaintiff's case frivolous, unreasonable, or groundless. Generally, therefore, the denial of a motion for judgment as a matter of law made at the close of all evidence strongly indicates that the plaintiff's case was not frivolous, unreasonable, or groundless. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 438 (6th Cir. 2009) ("It generally will be difficult to deem a claim frivolous 'where the plaintiff has . . . presented sufficient evidence at trial to prevent the entry of a judgment against him as a matter of law.'" (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 765, 771 (2d Cir. 1998))).

## C.

Great Steaks argues that, as a prevailing defendant, it is entitled to attorneys' fees under Title VII's fee-shifting provision because the EEOC's case was frivolous, unreasonable, or groundless. According to Great Steaks, the EEOC should have known its case was frivolous, unreasonable, or groundless at the outset when it contacted scores of female employees, yet came up "virtually empty-handed," and when Carter did not appear at the conciliation conference.[1] Even if the case was not frivolous, unreasonable, or groundless from the outset, Great Steaks insists that the EEOC continued to litigate after it clearly became so. In support, it describes how the number of claimants and defendants dwindled from a class of claimants and two defendants at the initiation of the action to one claimant and one defendant by trial. It notes further that Carter failed to appear for a deposition and that Lovett ended hers prematurely, which Great Steaks presumably thinks should have demonstrated to the EEOC that its case was groundless. Finally, it argues that continued litigation based solely on Jones's allegations was frivolous. It highlights inconsistencies in Jones's deposition testimony as well as the affidavit from her coworker, Heather Smith, which challenged Jones's allegations. Great Steaks maintains that the affidavit and inconsistencies should have apprised the EEOC of the fact that its case was frivolous, unreasonable, or groundless.

We disagree and hold that the district court acted within its discretion in determining that the EEOC's case was not frivolous, unreasonable, or groundless. The EEOC's case had a

---

[1]Great Steaks also asserts that the EEOC included Clipper Seafood as a defendant even though no allegations of sexual harassment pertained to it. According to Great Steaks, the EEOC had no reasonable basis for including Clipper Seafood in the case. We are not addressing a motion for attorneys' fees brought by Clipper Seafood, however. Our concern is not whether the case against Clipper Seafood was frivolous, unreasonable, or groundless. Instead, our focus is on the EEOC's case against Great Steaks. Hence, we need not consider this contention.

factual and legal basis from start to finish. Although it evolved over time to include fewer claimants and defendants than originally anticipated, Jones's allegations provided a legal and factual basis on which to conduct the litigation through trial. The inconsistencies in Jones's allegations and the contradictory affidavit from her coworker simply created factual issues for a jury to resolve; they did not make her allegations frivolous, unreasonable, or groundless.

In reaching this determination, we pay substantial deference to the district court's finding that the EEOC's case presented justiciable issues of fact warranting a trial. The district court, which managed the litigation and conducted the trial, is in the best position to make this assessment. Its denial of Great Steaks' motion for judgment as a matter of law made at the close of all evidence, which indicated that the EEOC had set forth a legally sufficient evidentiary basis for a reasonable jury to find in its favor, *see* Fed. R. Civ. P. 50(a), strongly underscores that the EEOC's case had a reasonable legal and factual basis and therefore was not frivolous, unreasonable, or groundless. Accordingly, we affirm the district court's denial of attorneys' fees under Title VII's fee-shifting provision.

## III.

We next address Great Steaks' contention that the district court erred when it declined to award attorneys' fees under the EAJA. Our review of a district court's denial of attorneys' fees under the EAJA is for abuse of discretion. *Cody v. Caterisano*, 631 F.3d 136, 141 (4th Cir. 2011). We must consider, however, whether the EAJA's mandatory fee provision applies in this Title VII context. This involves a question of statutory interpretation, which we review de novo. *See Blaustein & Reich, Inc. v. Buckles*, 365 F.3d 281, 286 (4th Cir. 2004) ("[W]e review questions of statutory interpretation de novo."). Although the district court did not deny Great Steaks' application for attorneys' fees under the EAJA on this

basis, we may affirm the district court on this alternative ground as it is apparent from the record. *See In re Maco Homes, Inc.*, 180 F.3d 163, 165 n.4 (4th Cir. 1999).

## A.

Typically, under the "American Rule," parties to litigation bear their own attorneys' fees and costs. *See Goldstein v. Moatz*, 445 F.3d 747, 751 (4th Cir. 2006); *Brzonkala v. Morrison*, 272 F.3d 688, 690 (4th Cir. 2001). The EAJA creates an exception to the American Rule for civil actions in which the United States is a party. *See Goldstein*, 445 F.3d at 751. Congress, cognizant of the vast disparity of resources between the government and private litigants, enacted the EAJA out of concern that the expense involved in litigating against unreasonable government action might deter private litigants from vindicating their rights in civil actions and administrative proceedings in which the United States is a party. Equal Access to Justice Act, Pub. L. No. 96-481, § 202, 94 Stat. 2325, 2325 (1980). To alleviate this concern, Congress allowed for individuals and entities to recover attorneys' fees and costs against the United States in specified situations. *Id.* § 202(c)(1).

As part of the EAJA, Congress provided a mandatory fee provision in 28 U.S.C. § 2412(d). It provides as follows:

> Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justi-

fied or that special circumstances make an award unjust.

*Id.* § 2412(d)(1)(A). The government bears the burden of proving that its position was substantially justified, *Clay Printing*, 13 F.3d at 815, which requires it to demonstrate that its position was "justified to a degree that could satisfy a reasonable person," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). To be substantially justified, "[t]he government's position must be more than merely undeserving of sanctions for frivolousness and must instead have a reasonable basis both in law and fact." *United States v. Cox*, 575 F.3d 352, 355 (4th Cir. 2009) (citation omitted) (quoting *Pierce*, 487 U.S. at 565-66) (internal quotation marks omitted).

Great Steaks, as the prevailing party in the action below, sought to avail itself of this mandatory fee provision. As it argued at the district court, Great Steaks posits on appeal that the EEOC's position was not substantially justified. It further argues that the district court erroneously placed on it the burden of proving that the government's position was not substantially justified. Great Steaks' arguments fail for another reason, however: The EAJA's mandatory fee provision does not apply in this case.

### B.

The EAJA's mandatory fee provision contains a clear exception to its applicability for situations in which another provision of federal law provides for the recovery of attorneys' fees and expenses against the government. *See EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 881 (7th Cir. 1994); *EEOC v. Consol. Serv. Sys.*, 30 F.3d 58, 59 (7th Cir. 1994); *EEOC v. Kimbrough Inv. Co.*, 703 F.2d 98, 103 (5th Cir. 1983). The opening line of § 2412(d) denotes that the mandatory fee provision applies "[e]xcept as otherwise specifically provided by statute." § 2412(d)(1)(A). The EAJA also contains a savings clause that clarifies the

meaning and extent of this exception. It provides that § 2412(d) does not "alter[ ], modif[y], repeal[ ], invalidate[ ], or supersede[ ] any other provision of Federal law which authorizes an award of such fees and other expenses to any party other than the United States that prevails in any civil action brought by or against the United States." § 206, 94 Stat. at 2330. The import of this statutory language is that when another provision of federal law provides for the recovery of attorneys' fees against the government in a given case, the EAJA's mandatory fee provision does not apply.[2] *See, e.g.*, *Consol. Serv. Sys.*, 30 F.3d at 59 ("Congress made as clear as it could that the Act was inapplicable to cases in which a statute regulating awards of attorney's fees against the government was already in place."); H.R. Rep. No. 96-1418 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4984, 4997 ("[Section 2412(d)(1)(A)] is intended to apply only to cases (other than tort cases) where fee awards against the government are not already authorized."). By so limiting the mandatory fee provision's applicability, Congress sought to prevent private litigants from circumventing more stringent standards imposed by other fee-shifting statutes, which would, in effect, impede the considered policy choices underlying those statutes. *See* Gregory C. Sisk, *The Essentials of the Equal Access to Justice Act: Court Awards of Attorney's Fees for Unrea-*

---

[2]We reject Great Steaks' argument that this exception does not apply when another provision of federal law provides for the recovery of attorneys' fees against the government, but the standard for recovering under that provision is narrower or more difficult to satisfy than the substantial-justification standard. Great Steaks urges that, in such a circumstance, the EAJA's mandatory fee provision can supplement the other attorneys' fee provision. It cites *Gavette v. Office of Personnel Management*, 808 F.2d 1456 (Fed. Cir. 1986), for support. We find this distinction not only unsupported by the EAJA's text, but also undermined by its savings clause. *See Huey v. Sullivan*, 971 F.2d 1362, 1367 (8th Cir. 1992) ("The savings provision in no way qualifies the type of change that it prohibits. Accordingly, we interpret this provision as prohibiting § 2412(d) from either narrowing or broadening the award of fees allowed by other provisions of federal law."). We therefore decline to adopt this approach.

*sonable Government Conduct (Part One)*, 55 La. L. Rev. 217, 259 (1994).

This interpretation comports with our holdings in *EEOC v. Clay Printing Co.* and *Guthrie v. Schweiker*, 718 F.2d 104 (4th Cir. 1983). In *Clay Printing*, we held that, in an Age Discrimination in Employment Act action brought by the EEOC against a private entity, the prevailing defendant could recover attorneys' fees under the EAJA's mandatory fee provision. 13 F.3d at 817-18. Similarly, in *Guthrie*, we decided that prevailing plaintiffs in Social Security Act cases could obtain attorneys' fees under the EAJA's mandatory fee provision. 718 F.2d at 107-08. In neither context did there exist a provision of federal law other than the EAJA that authorized the prevailing party to obtain an award of attorneys' fees against the government. *Clay Printing*, 13 F.3d at 817; *Guthrie*, 718 F.2d at 107. Thus, the absence of another provision of federal law authorizing an award of attorneys' fees against the government meant that the parties could seek an award of attorneys' fees under the EAJA's mandatory fee provision.

In this case, however, another provision of federal law exists that authorizes prevailing defendants such as Great Steaks to obtain an award of attorneys' fees against the government. As described above, Title VII contains its own provision that allows prevailing defendants to recover attorneys' fees in actions involving the United States as a party, *see* 42 U.S.C. § 2000e-5(k), and it imposes a more stringent standard for prevailing defendants to satisfy than the EAJA's substantial-justification standard, *see Hanson v. Comm'r*, 975 F.2d 1150, 1153 (5th Cir. 1992) (recognizing that the substantial-justification standard is not as stringent for prevailing defendants "as the standard . . . governing fee awards in Title VII cases"). Furthermore, as previously noted, this stringent standard reflects the careful balancing of conflicting policies present in the Title VII context.

Because Title VII contains its own fee-shifting provision allowing for prevailing defendants to obtain an award of attor-

neys' fees against the government, we hold that the EAJA's mandatory fee provision is unavailable to defendants, such as Great Steaks, who prevail against the EEOC in actions brought under it. A contrary holding would allow prevailing defendants to circumvent Title VII's more stringent standard for obtaining attorneys' fees, thus undermining the policy goals it furthers by making it easier for prevailing defendants to recover. *See* Sisk, *supra*, at 260. Congress has instructed that the EAJA's mandatory fee provision does not apply in these circumstances. We therefore affirm the district court's denial of attorneys' fees under the EAJA.

## IV.

We lastly address Great Steaks' assertion that the district court erred in denying its motion for attorneys' fees and costs under 28 U.S.C. § 1927. Our review of a district court's decision concerning whether to award costs, expenses, and attorneys' fees under this provision is for abuse of discretion. *Chaudhry v. Gallerizzo*, 174 F.3d 394, 410 (4th Cir. 1999).

Section 1927 provides, in relevant part, that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." § 1927. "The unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings." *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999). Bad faith on the part of the attorney is a precondition to imposing fees under § 1927. *Chaudhry*, 174 F.3d at 411 n.14; *Brubaker v. City of Richmond*, 943 F.2d 1363, 1382 n.25 (4th Cir. 1991). Unlike Title VII's fee-shifting provision or the EAJA's mandatory fee provision, § 1927 is unconcerned with the merits of the lawsuit. *See DeBauche*, 191 F.3d at 511. It "does not distinguish between winners and losers, or between plaintiffs and defendants." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980). It "is indifferent to the equities of a dispute and to the values advanced by the sub-

stantive law." *Id.* Instead, § 1927 "focuses on the conduct of the litigation," *DeBauche*, 191 F.3d at 511, and "is concerned only with limiting the abuse of court processes," *Roadway Express*, 447 U.S. at 762.

Great Steaks advances three grounds to support its contention that the district court erred in declining to award it attorneys' fees and costs under § 1927. First, according to Great Steaks, a reasonable investigation would have revealed the weaknesses in the EEOC's case and prompted the EEOC to dismiss it, but instead, the EEOC litigated the case even though it lacked a foundation. Second, Great Steaks argues that the EEOC vexatiously multiplied the proceedings by moving to strike its summary judgment motion's memorandum of law on the ground that it used a font size exceeding what was allowed under the local rules. Great Steaks notes that, after the EEOC filed the motion to strike and Great Steaks responded to it, the EEOC failed to pursue the motion further. Finally, Great Steaks contends that the EEOC vexatiously multiplied the proceedings when it filed numerous motions in limine the week before trial.

The district court did not abuse its discretion in denying attorneys' fees and costs under § 1927. Great Steaks' first contention concerning the weaknesses of the EEOC's case does not fall within the purview of § 1927, which "focuses on the conduct of the litigation and not on its merits," *DeBauche*, 191 F.3d at 511. As for Great Steaks' arguments concerning the motion to strike and the motions in limine, there is nothing to suggest, aside from Great Steaks' unsupported conjecture, that the EEOC filed them in bad faith or that they unreasonably and vexatiously multiplied the proceedings. In fact, the district court expressly found that the EEOC had not "engaged in bad faith conduct or vexatiously multiplied the proceedings at any point." In the absence of any compelling evidence demonstrating that the district court abused its discretion in making this finding, we defer to it.

## V.

For these reasons, we affirm the district court's order denying Great Steaks' motion for attorneys' fees.

*AFFIRMED*