WILKINSON, Circuit Judge,
concurring:
I concur in full in Judge Keenan’s fine opinion. I write separately to address an unfortunate implication in the appellant’s brief: that federal agencies, and the Equal Employment Opportunity Commission (“EEOC” or “Commission”) in particular, should be treated differently from private parties with regard to attorneys’ fees determinations.
The district court noted in its order “that the EEOC acted unreasonably by initiating litigation against Propak after [a more-than-five-year] investigation and at a time when the allegedly noncompliant facilities had been closed and the class of individuals purportedly injured had not existed for five years.” J.A. at 564. Nevertheless, the EEOC suggests that it should be given special leeway for the astonishing delays that rendered initiation of this suit so problematic. For example, it offers as a partial explanation for its delay the fact that “evidence provided by Propak was waiting to be reviewed and analyzed by the EEOC’s over-burdened staff.” Appellant’s Br. at 52; see also id. at 53 (justifying a lack of activity by noting the Commission’s “review of voluminous documents and analysis of complex statistical data”). The EEOC also seems to suggest that because we have shown deference to its performance of its administrative functions in other circumstances, the district court should not have “second guess[ed]” the Commission’s pursuit of this suit and awarded attorneys’ fees. Id. at 55-56. Together, these statements appear to argue that agencies should be graded on a curve, due to the burdens placed upon them by statute, regulation, their own internal review processes, and their need to assure the optimal deployment of finite resources.
These arguments do have some intuitive appeal. As the EEOC notes in its brief, the Commission receives tens of thousands of complaints to review each year under Title VII of the Civil Rights Act of 1964 and other statutes such as the Age Discrimination in Employment Act, the Americans with Disabilities Act, and the Equal Pay Act. See Appellant’s Br. at 6. The agency is required to investigate each of *155 these complaints and, if it finds reasonable cause to believe them true, attempt to eliminate any alleged unlawful conduct through informal methods. See 42 U.S.C. § 2000e-5(b). If these potentially time consuming efforts fail, the Commission is authorized to bring a civil suit against a private party. See id. § 2000e-5 (f)(1).
These are substantial tasks. Notwithstanding the Commission’s burden, however, Congress and the Supreme Court have not seen fit to exempt it altogether from awards to prevailing defendants under Title VII. The statute specifically provides that “the court, in its discretion, may allow the prevailing party, other than the Commission or the United States, a reasonable attorney’s fee (including expert fees) as part of the costs, and the Commission and the United States shall be liable for costs the same as a private person.” Id. § 2000e-5(k). Interpreting this language in Christiansburg Garment Co. v. EEOC, the Supreme Court rejected a reading that would have found the EEOC legally exempt from paying fees where a private plaintiff would not be. 434 U.S. 412, 422 n. 20, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). It noted that although there were some arguments that “fee awards against the Commission should rest on a standard different from that governing fee awards against private plaintiffs,” the statute did “not support a difference in treatment among private and Government plaintiffs when a prevailing defendant seeks to recover his attorney’s fees.” Id. at 423 n. 20, 98 S.Ct. 694. Needless to say, most private parties would not dream of trying to excuse the excessive delays here with the explanation that they were otherwise burdened or occupied. Doctrinally, then, the issue is closed.
And with good reason. The Christians-burg Court’s standard for a prevailing defendant to recover fees from a plaintiff— that the suit was “frivolous, unreasonable, or without foundation,” id. at 421, 98 S.Ct. 694 — reflects a determination to head off unjustified litigation. A party forced to defend against a groundless lawsuit is prejudiced every bit as much if the litigation is brought by a federal agency as if it were commenced by a private party. The EEOC in particular brings suit against a wide range of employers for whom the defense of lawsuits may be prohibitively expensive. Christiansburg was sensitive to this problem, noting that “many defendants in Title VII claims are small- and moderate-size employers for whom the expense of defending even a frivolous claim may become a strong disincentive to the exercise of their legal rights.” Id. at 423 n. 20, 98 S.Ct. 694.
No doubt Congress was aware that assessing attorneys’ fees against the EEOC when it brings a groundless suit might provide a disincentive for the agency to litigate meritorious cases. But it was not unreasonable for Congress to expect the Commission, with its store of expertise and experience, to recognize a baseless suit before being told the same by a federal court. For this reason, “[w]hen a court imposes fees on a plaintiff who has pressed a ‘frivolous’ claim, it chills nothing that is worth encouraging.” Hutchinson v. Sta-ton, 994 F.2d 1076, 1081 (4th Cir.1993). Thus, to vindicate the Title VII fee provision’s goals of encouraging meritorious suits while protecting innocent defendants from frivolous ones, the EEOC must be subject to the same potential penalties as private parties who bring vexatious litigation.
Applying a different standard to the EEOC in the absence of any statutory differentiation would simply encourage sub-optimal agency behavior. After all, although it faces the special burdens described above when litigating a case, the *156 EEOC also operates with particular advantages as a. litigant. As a government agency, it often benefits from greater resources than do the private parties it sues. See EEOC v. Great Steaks, Inc., 667 F.3d 510, 519 (4th Cir.2012) (noting the “vast disparity of resources between the government and private litigants”); Roanoke River Basin Ass’n v. Hudson, 991 F.2d 132, 138 (4th Cir.1993) (acknowledging congressional concern that private parties’ “resources are substantially outweighed by those of the government”). The United States in general enjoys certain procedural advantages in federal court not available to private litigants. See 14 Charles Alan Wright et al., Federal Practice and Procedure § 3652 (3d ed.1998) (noting various privileges enjoyed by the federal government as a plaintiff). And Title VII in particular provides the EEOC with the ability to exact, albeit unintentionally, high costs on a private employer throughout the investigative process and potential subsequent litigation. See, e.g., 29 C.F.R. § 1601.16 (granting the EEOC authority to issue subpoenas and compel production of evidence under the control of those subpoenaed); 29 C.F.R. § 1602.14 (requiring that a defendant charged with discrimination preserve all relevant records until final disposition of the charge).
These advantages have the potential to combine with the more dubious aspects of bureaucratic culture in a way that can be particularly toxic. There is a danger that those inside a public bureaucracy, armed with significant resources, authority, and discretion, may become gradually numb as to how their actions affect those outside parties they investigate or sue. It is bad enough for doctors’ or lawyers’ offices, or car dealerships, or mail-order retailers to jerk patients or clients or customers around, but those relationships are at least often based on some element of choice and subject to a measure of market discipline. Government, by contrast, has a more unfettered hand over those it either serves or investigates, and it is thus incumbent upon public officials, high and petty, to maintain some appreciation for the extent of the burden that their actions may impose.
Granted that this is an adversary process, it is still remarkable that the saga of delay and indifference recounted by the district court has brought forth not a glint of recognition as to what the agency subjected the defendant to with its start-and-stop behavior over a total investigative and litigative course of nearly eight years. Just as importantly, the plaintiff in this action was left hanging, forced to badger the Commission through counsel for his own right to sue. The same limbo affected both parties to this controversy, and if attorneys’ fees were not awarded here, the statutory provision would be effectively decapitated.
As one would hope not to judge an individual on a single incident, so one should not judge an agency on a single case. One can condemn a particular instance of conduct without diminution of respect for the many instances where EEOC litigation challenging illicit discrimination was properly conducted and more than proved its worth. But what happened here was inexcusable. Of course no one wants or expects the Commission to bring suit prematurely. But by the same token, no company deserves to have its affairs tied up by a government agency for this period of time. Even if the agency will not acknowledge the damage that such lengthy investigation and groundless litigation can inflict on companies and their employees, we can. Like individuals, businesses have a right to get on with their affairs. Investigations of this length divert a company’s people and resources, preventing the business from devoting its capital, human and financial, to those en *157 terprising purposes for which it was established.
In addition to deciding to litigate a case it had little chance of winning, the EEOC has continued to press its case at the attorneys’ fees stage. Its brief essentially rehashes the same arguments on which it was quite unable to prevail on the merits. The Supreme Court has warned that “[a] request for attorney’s fees should not result in a second major litigation.” Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). But that is exactly what we have. This case “has proceeded too long and its continuation, with the attendant burden of expense, will in and of itself implicate the ability to work justice.” Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 181 (4th Cir.1994).
The story of this litigation is regrettable because the EEOC provides primary recourse to those victims of discrimination that persists in our society to an unfortunate extent. The reference to statutory goals and missions, however, cannot be divorced from the manner in which those purposes are implemented. Here, the Commission spent fíve-and-a-half on-and-off years pursuing its investigation of Pro-pak, by which point the company had closed both facilities in question and, as noted by the district court, the agency had been unable to locate purported victims or class members. The district court was left to observe that “by the time the EEOC determined to bring this action it was abundantly clear that a lawsuit would be moot and thus it was unreasonable to have filed it.” J.A. at 565. Furthermore, once it had initiated litigation, the Commission acknowledged its unusually long delay and limited discovery left no doubt that the agency still lacked the victims, witnesses, documents or viable theories of relief to win the case. After examining this evidence, the district court not surprisingly determined “that the EEOC’s pursuit of the litigation after its filing was unreasonable.” J.A. at 565. Surely this is not and must not become the norm. It is not farfetched to believe that the nation’s deep commitment to combatting discrimination will be affected for good or ill by the esteem in which this important agency is held.