**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 21-1284

NAGLA ABDELHALIM,

Plaintiff - Appellant,

v.

AARON LEWIS; DINARA LEWIS; ANDREW MCDEVITT; ROXANA MCDEVITT,

Defendants - Appellees,

and

ARMISTEAD PARK HOMEOWNERS ASSOCIATION,

Defendant.

No. 21-2405

NAGLA ABDELHALIM,

Plaintiff - Appellant,

v.

AARON LEWIS; DINARA LEWIS; ANDREW MCDEVITT; ROXANA MCDEVITT,

Defendants - Appellees,

and

ARMISTEAD PARK HOMEOWNERS ASSOCIATION,

Defendant.

---

**No. 22-1035**

---

NAGLA ABDELHALIM,

Plaintiff - Appellee,

v.

ANDREW MCDEVITT; ROXANA MCDEVITT,

Defendants - Appellants,

and

AARON LEWIS; DINARA LEWIS; ARMISTEAD PARK HOMEOWNERS ASSOCIATION,

Defendants.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria.  Liam O'Grady, Senior District Judge.  (1:19-cv-00858-LO-TCB)

---

Argued:  December 6, 2023                          Decided:  January 5, 2024

---

Before WYNN, THACKER, and HEYTENS, Circuit Judges.

---

Vacated by published opinion.  Judge Thacker wrote the opinion, in which Judge Wynn and Judge Heytens joined.

---

2

Nicholas Harry Hantzes, HANTZES & ASSOCIATES, Fairfax, Virginia, for Appellant/Cross-Appellee.  Philip Corliss Krone, COOK CRAIG & FRANCUZENKO, PLLC, Fairfax, Virginia; Douglas R. Kay, OFFIT KURMAN, PA, Tysons Corner, Virginia, for Appellees/Cross-Appellants.

———————

THACKER, Circuit Judge:

This case arises from an ongoing dispute between Nagla Abdelhalim ("Appellant") and her neighbors, Aaron and Dinara Lewis and Andrew and Roxana McDevitt (collectively, "Appellees"). Appellant is an Egyptian immigrant and a Muslim woman who wears a hijab in public. Appellant and Appellees live in the same neighborhood. Appellees are Appellant's immediate neighbors, with one family living on each side of Appellant's home. The underlying dispute arose when Appellant began a short-term rental business, renting out her basement on platforms such as Airbnb. Appellees disapproved of the practice, which also violated a local ordinance at the time. Appellees confronted Appellant and then began a year long campaign of harassment against her, despite Appellant stopping her short-term rental business.

Eventually, Appellant filed suit against Appellees alleging, among other claims, that Appellees violated the Fair Housing Act ("FHA"), 42 U.S.C. § 3617, by engaging in a course of conduct which included threats, intimidation, and interference with Appellant's enjoyment of her home in an attempt to drive her out of the neighborhood because of her race, national origin, and religion. The district court ultimately granted summary judgment to Appellees because it concluded that Appellant had not produced evidence of an essential element of her claims -- intentional discrimination based on a protected ground. Appellees then moved the court for an award of attorneys' fees and the court granted that motion.

Appellant does not challenge the district court's summary judgment order. Rather, this appeal relates only to the district court's fee award. We conclude that the district court applied the wrong legal standard and thus abused its discretion in granting attorneys' fees

4

to Appellees. Applying the correct standard, we hold that Appellant's case was not "without foundation." Therefore, we vacate the fee award.

I.

A.

Appellant purchased a home in the Armistead Park neighborhood of Fairfax County, Virginia in September 2017 and resides there with her brother, Haitham. Appellant began renting her basement to tenants on a short term basis through a listing on Airbnb in March 2018. Between March and June 2018, Appellant had approximately nine tenants rent the basement for spans of three to 28 days. As a result, Appellees began noticing and complaining of increased traffic and reduced visitor parking. According to Appellees, Appellant's short term rental business caused them to have "overall safety concerns." J.A. 1581.*

On May 5, 2018, three of the Appellees and another neighbor who is not a party to this lawsuit "went to [Appellant's] house and stood together at her front door . . . . [They] voiced their concerns surrounding the rental activity . . . and asked that she stop renting the space." J.A. 1581. The district court described the incident as follows:

> Mr. McDevitt and others cited the rules of the HOA and a Fairfax County ordinance in arguing that the rentals were illegal. The interaction lasted approximately forty minutes, during which time Mrs. Lewis asked [Appellant] how much money she made and where she worked. Mr. McDevitt, with Mrs. Lewis in agreement, said he would make [Appellant's] life miserable. At some point during the interaction, [Appellant's] brother, Haitham, came to the door and

---

* Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

> addressed the neighbors, asking them to leave. [Appellant] installed security cameras shortly after this encounter.

J.A. 1581–82 (internal citations omitted).

Appellant describes the incident as being more aggressive. According to Appellant, Appellees "yelled and raised their voices at her and threatened and intimidated her for 40 minutes. The neighbors were blocking the front door [and Appellant] could not walk out her door and was not free to leave her house." Appellant's Opening Br. at 3. Appellees "stated that they did not feel 'safe' with [Appellant] in the neighborhood." *Id.* They told her they would take pictures of her and her brother and that "they wanted to know who exactly lived in the house, who was coming into and out of the house, including friends," and "they made other demands for information about where [Appellant] worked, what her sources of income were, and who lived in the house with her." *Id.* at 4. Appellant also says that Mrs. Lewis asked her "repeatedly about where her money came from, and how much money did she make and how could she afford the house." *Id.*

Appellant claims that she removed her home from Airbnb the day of the encounter with Appellees. And she asserts that "the nature of the questions and manner of questioning led [Appellant] to believe [Appellees] thought she was being supported by some kind of terrorist group." J.A. 1595 (cleaned up).

Ten days later, on May 15, 2018, all parties attended an Armistead Park Homeowner's Association ("HOA") meeting. During the meeting, Appellees "voiced concerns about the short-term rental activity; Mr. McDevitt spoke of safety concerns." J.A. 1582. The HOA did not have its own policy on short term rentals, so it deferred to the

6

ordinances in place in Fairfax County which, at that time, did not permit short term rentals. Appellant explained at the HOA meeting that she had removed the listing from Airbnb and would stop short term rentals as soon as she had fulfilled her existing contracts for May and June.

Appellant claims that after the meeting, the President of the HOA "indicated to [her] . . . that the source of the [Appellees'] hostility toward her was because she was from the Middle East and wore the Hijab." J.A. 1966. When she described the conversation more specifically, Appellant explained that the HOA President "advised me to go to the Fairfax County and file a complaint against the Lewis and McDevitts. And he just simply told me, 'Just tell them because of your -- they're giving you all these issues.'" *Id.* at 1314. Appellant alleged that the HOA President pointed to her hijab.

Following the HOA meeting, Mr. McDevitt wrote a detailed complaint about Appellant's short term rentals to the HOA Board on May 27, 2018. The Board secretary responded that the Board agreed with Mr. McDevitt that "short term rentals should not be happening in our neighborhood" and that he could submit any evidence of "additional activity" to the Board. J.A. 1583 (citation omitted). Then, on June 19, 2018, Mr. McDevitt submitted complaints to Fairfax County regarding Appellant's short term rental activity at the Armistead Park house and at another property Appellant owned and rented on Airbnb. In July 2018, Appellant began renting the basement of her Armistead Park house to a long term tenant, which was allowed in Fairfax County and approved by the HOA.

But Appellees' alleged campaign of harassment continued "[o]ver an extended period of time." J.A. 1583. Appellees took numerous photographs of Appellant's cars and

7

guests/suspected tenants. And the Lewises, who shared a driveway with Appellant, used their cars to block access to the driveway or block cars into the driveway. In addition, the Lewises drove up to the back of Appellant's house and to her garage door so that they could look inside. At other times, they drove through Appellant's yard.

This menacing behavior was not all, however. From December 2018 to March 29, 2019, Appellant received a series of text messages and calls from anonymous numbers. The text messages "included demands for [Appellant's] work address and to meet and talk," but the senders would not respond to requests to identify themselves. J.A. 1584. The text messages appeared to be from Mr. Lewis, however, because on March 2, 2019, the sender wrote "Hey Nagla, I like for you not to park your car over there no more. Park Infront of you own House. Next time it be park by my [expletive] house I will get it Tow away. Me and my wife is so tired of you and your family." *Id.* Other messages said, "if you ever park your [expletive] car by my house again I will fine your [expletive]. And also have your [expletive] car Tow away. We cant wait to you move out of our area. // when your [expletive] go to work tomorrow me and my wife will see you. we have words for your [expletive]." *Id.*

Appellant called the police after receiving the March 2 text messages but then asked the police not to speak to Appellees. But she called the police again on March 3 due to the continued harassment and the police questioned Mr. Lewis. Additionally, in "February and March 2019, [Appellant] received eight calls between 8:59 and 11:02 p.m." J.A. 1585. As the district court noted, "None of the text messages referred to [Appellant's] race, color,

8

religion, or national origin; [Appellant] never heard anyone say anything on the phone calls or associated voicemails." *Id.*

According to Appellant, Mr. Lewis continued taking photographs of her and her guests, and he continued driving close to her basement window this entire time.

Appellant also alleges that on March 19, 2019, the HOA held a meeting to present and discuss policies to comply with the FHA, "to prevent homeowners from taking actions to harass other neighbors based on race, religion, gender, and national origin and other protected categories and to assess discriminatory harassment among neighbors." Appellant's Opening Br. at 11. Appellant attended the HOA meeting, as did Mr. Lewis. "Mr. Lewis expressed opposition to the Board's announcement at the meeting and repeatedly asked argumentative questions which reflected he was opposed to the policy against discrimination." *Id.* at 12.

## B.

On October 19, 2019, Appellant filed an Amended Complaint against Appellees and the Armistead Park HOA for violation of the FHA, 42 U.S.C. § 3617, "by engaging in a course of conduct which included threats, intimidation, and interference with [Appellant's] enjoyment of her home in an attempt to drive her out of the neighborhood because of her race, national origin, and religion." Appellant's Opening Br. at 12. Appellant also filed claims against Appellees for violation of the Civil Rights Act, 42 U.S.C. § 1982, and for conspiracy to violate the Civil Rights Act, 42 U.S.C. § 1985(3). Appellant voluntarily dismissed the HOA as a defendant after the district court denied the HOA's motion to dismiss the complaint.

9

On June 17, 2020, the district court granted summary judgment in favor of Appellees on all claims. Specifically, each of Appellants' claims had a common element -- intentional discrimination based on Appellant's race, color, religion, or national origin. The district court explained that it could not "locate evidence that raises a genuine issue of material fact as to whether [Appellees] discriminated based on [Appellant's] race, color, religion . . . or national origin," and Appellant "fail[ed] to show that [Appellees'] discontent as to rentals was pretextual, as her arguments rely on unsupported inferences and conclusions." J.A. 1594.

According to the district court, Appellant's only argument that Appellees were discriminating against her based on a protected characteristic was that based on the May 5 front door incident, she believed they thought she was being supported by a terrorist organization because Appellees used "code words" when they said they were concerned about safety and asked about her sources of income. J.A. 1590.

The district court held that this inference was "conclusory," "vague," and unsupported by the record. J.A. 1595. The harassment described by Appellant was, in the district court's view, all related to Appellees' opposition to the short term rentals. Because the district court held that Appellant had no evidence of an essential element of her claims, it granted summary judgment in Appellees' favor.

## C.

On June 30, 2020, Appellees filed requests for attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. §§ 3613(c)(2) and 1988(b). The Lewises argued that Appellant's claims were frivolous, unreasonable, or without foundation, and

10

requested $53,824.50 in attorneys' fees.  The McDevitts also argued that Appellant's claims were frivolous, unreasonable, or without foundation, but they went farther and also argued that Appellant's case was filed in bad faith.  The McDevitts did not include an amount sought or a reasonable estimate of the amount sought as required by Rule 54.

Appellants' attorney notified the McDevitts' attorney less than a month later that the motion was defective because it failed to state an amount requested.  Two days later, the McDevitts filed a motion for enlargement of time to file a complaint fee petition.  The court entered an agreed briefing schedule and briefing was complete in August 2020.  The district court ruled on the motions in February 2021.  The court held that all Appellees were entitled to attorneys' fees because Appellant's claims were without foundation because "[i]n choosing to sue under the Fair Housing Act, [Appellant] chose to pursue her case based solely on the accusation of discrimination without evidence that [Appellees'] motivations were discriminatory." J.A. 2125.  The court did not hold that Appellant filed her case in bad faith, however, because Appellees "did, after all, peer into her windows, block access to her driveway, and take pictures of her guests' vehicles." *Id.* at 2126.

The district court also granted the McDevitt's motion for enlargement of time, concluding that the error was based on excusable neglect and there was "little danger of prejudice" and only "negligible" impact on the proceedings.  J.A. 2126.  The court ordered the McDevitts to file an accounting of their requested fees and gave Appellant an opportunity to respond to the reasonableness of both the Lewises' and McDevitts' requested amounts.  The McDevitts ultimately requested $141,152.50 in fees and an

11

additional $5,625 for "the preparation of the accounting and supporting papers." J.A. 2128–32.

Appellant objected to the amount of fees requested by each party. She did not argue that the rates were unreasonable but argued that the attorneys should have filed motions to dismiss rather than waiting until summary judgment. She also took issue with the number of hours the McDevitts' attorneys spent on various aspects of the case. And Appellant argued that her financial situation did not allow her to pay the award of fees because she had lost her job and been unable to fill her rental units during the COVID-19 pandemic.

Though the district court did not hold a hearing, it granted the Lewises their full requested fee of $54,148.90, and it granted the McDevitts a reduced fee award of $69,812.00. The court reduced the McDevitts' award because it determined that the number of hours credited should be comparable for each couple because the attorneys were defending the same case with the same allegations, and the Lewises' attorneys were able to accomplish the same result with substantially fewer hours of work. The court also determined that Appellant had the ability to pay a fee award because she had equity in her properties and retained the education and capacity to earn a professional salary.

D.

Appellant did not appeal the district court's order granting summary judgment to Appellees. Rather, this appeal concerns only the district court's order granting the McDevitts' motion for enlargement of time, and the orders granting Appellees' motions for attorneys' fees. Additionally, the McDevitts filed a cross-appeal challenging the district court's reduction of their requested attorneys' fees.

12

We consider only whether the district erred in granting Appellees' fee petitions as that question is dispositive.

## II.

As a general matter, a litigant must pay her own attorneys' fees. *See Christiansburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 415 (1978). But in civil rights cases, like this one involving claims pursuant to the FHA, fee shifting provisions allow district courts to award attorneys' fees to a prevailing party. *Id.* at 416. Where the plaintiff is the prevailing party, she should typically be awarded fees in the normal course. *Id.* at 416–17. But where, as here, the prevailing party is a defendant, the test is more stringent. Because Congress did not want to discourage plaintiffs from bringing reasonable cases, the Supreme Court has held that to award fees to a prevailing defendant, the court must find "that the plaintiff's action was frivolous, unreasonable, *or without foundation*, even though not brought in subjective bad faith." *Id.* at 421 (emphasis supplied).

"In applying these criteria, it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg Garment Co.*, 434 U.S. at 421–22. Thus, "an award will not stand if based only on the plaintiff's failure to prevail." *E.E.O.C. v. Propak Logistics, Inc.*, 746 F.3d 145, 151 (4th Cir. 2014). "An award of attorneys' fees to a prevailing defendant is a 'conservative tool, to be used sparingly' in cases in which the plaintiff initiated or continued to litigate a claim that the plaintiff 'knew or should have known was groundless, frivolous, or unreasonable.'" *Id.* (quoting *E.E.O.C. v. Great Steaks, Inc.*, 667 F.3d 510,

13

517 (4th Cir. 2012)). But "[t]here is neither a precise test to be used, nor a specific quantum of proof required, in determining whether a plaintiff's claim was unreasonable." *Propak Logistics*, 746 F.3d at 151 (citing *Arnold v. Burger King Corp.*, 719 F.2d 63, 65 (4th Cir. 1983)).

Given the difficulty of applying this standard, "'[t]he fixing of attorneys' fees is peculiarly within the province of the trial judge, who is on the scene and able to assess the oftentimes minute considerations which weigh in the initiation of a legal action.'" *Great Steaks*, 667 F.3d at 517 (quoting *Arnold*, 719 F.2d at 65). "We thus accord great deference to the trial court's assessment of whether the plaintiff's claim was frivolous, unreasonable, or groundless." *Great Steaks*, 667 F.3d at 517. A district court abuses its discretion when its reasoning "is flawed by erroneous factual or legal premises." *James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). "Additionally, we review the district court's factual findings in support of the fee award for clear error." *Propak*, 746 F.3d at 151–52.

III.

The threshold issue on appeal, and the one dispositive here, is whether the district court abused its discretion in determining that Appellant's claims were "without foundation" when it granted Appellees' motions for attorneys' fees. Appellant argues that the district committed legal error because it applied post hoc reasoning and held that her case was without foundation merely because she did not prevail. We agree.

In Appellant's opposition to the fee motions, she argued that there were various sources of circumstantial evidence that provided a foundation for her claim of intentional discrimination. For example, she argued that "the nature of [Appellees'] repeated

14

questioning regarding safety, [Appellant's] sources of income, who lived in the house and where she worked[,] and the manner of questioning on her front porch on May 5, 2018" were all reasonably perceived by her as "reflect[ing] animus" "based on [her] life experiences as [a] Muslim from the Middle East." J.A. 1957, 1993. Appellant argued that her perception "cannot be ignored" in determining whether she had a basis to file her claim because "[i]t cannot be expected in this day and age that [Appellees] would make any overt statement about the national origin and religion of [Appellant]. . . . Rather, the discrimination is evident from more subtle conduct." *Id.* at 1957–58, 1993–94.

Next, Appellant argued that Appellees' "overly aggressive and unreasonable conduct . . . combined with continuing to engage in aggressive acts for approximately one year after she agreed and did stop short term rental of her home in June 2018" was circumstantial evidence that supported her belief that their actions were based on animus rather than their disapproval of her short term rental business. J.A. 1959–60, 1996 (emphasis omitted). Appellant also pointed to the fact that Mr. Lewis objected to the HOA's proposed anti-discrimination policy "knowing that it [wa]s being considered to protect [Appellant]," to support her belief that Appellees were motivated by animus. J.A. 1966, 2003.

Finally, Appellant pointed to her interaction following the May 15, 2018 HOA meeting when the HOA President pointed to her hijab and told her to file a complaint against Appellees because "they're giving you all these issues" "because of your --." J.A. 1314; *see* J.A. 1966, 2003. Though Appellant acknowledged that the district court had held that this evidence was inadmissible and thus did not consider it at summary judgment,

15

Appellant asserted that it nevertheless "was still evidence that supports the claim was not without foundation." J.A. 1966, 2004.

Taking all of this evidence together, Appellant argued that she had a reasonable basis to believe that Appellees intended to discriminate against her based on her race, religion, and national origin, such that her claim was not without foundation. But the district court did not engage with any of these arguments in its order granting Appellees' fee motions. Instead, the district court's analysis was only a single paragraph:

> Plaintiff glosses over the fact that the evidence did not support the very foundation of her claim: discriminatory intent based on her race, national origin, or religion. In choosing to sue under the [FHA], she chose to pursue her case based solely on the accusation of discrimination without evidence that Defendants' motivations were discriminatory. Without such evidence, her case was without foundation.

J.A. 2125.

This brief explanation leads to the conclusion that the district court applied post hoc reasoning and determined that Appellant's claims were without foundation merely because she did not prevail at summary judgment. Our precedent confirms that where a plaintiff puts forth arguments that supported the filing of her claims, a district court must make clear that it considered those arguments in its fee decision.

First, in *Bryant Woods Inn, Inc. v. Howard Cnty.*, 124 F.3d 597, 607 (4th Cir. 1997), we affirmed the denial of a fee award where "a reasonable legal basis existed for [the plaintiff's] initiation and pursuit of its action" even though the plaintiff ultimately did not come forward with sufficient evidence to survive summary judgment on its claim of an FHA violation.

16

Then, in *EEOC v. Propak Logistics, Inc.*, 746 F.3d 145, 153 (4th Cir. 2014), we affirmed the fee award where the district court's fee decision engaged in detailed fact finding on grounds distinct from the summary judgment order. We explained there that "the district court's award was not based on the earlier summary judgment decision. Although the court referenced its previous findings of delay and prejudice from the summary judgment holding, and the two decisions set forth many overlapping facts, the two holdings were based on different principles of law." *Id.* at 152. Specifically, the district court considered the information available to the EEOC "when the complaint was filed" to determine that it had been filed unreasonably because the EEOC knew or should have known the case was "moot at its inception." *Id.* "Thus, the court's fee award reflected proper consideration of the *Christiansburg* standard by assessing whether the EEOC acted unreasonably in initiating the litigation." *Id.*

But the district court undertook no such analysis here, despite its awareness that the "award of attorneys' fees to a prevailing defendant is a 'conservative tool, to be used sparingly' in cases in which the plaintiff initiated or continued to litigate a claim that the plaintiff 'knew or should have known was groundless, frivolous, or unreasonable.'" J.A. 2124 (quoting *Propak Logistics*, 146 F.3d at 151 (citation omitted)). Rather, the district court's order reveals that it applied post hoc reasoning and held that Appellant's case was without foundation simply because she did not prevail. That was legal error. Thus, the district court abused its discretion in awarding attorneys' fees to Appellees.

Appellant's oppositions to the fee motions set forth sufficient evidence for us to determine that her claims were not "without foundation." Particularly compelling in this

17

analysis is that (1) the harassment continued well after Appellant ceased renting her basement on a short term basis; (2) Mr. Lewis opposed the anti-discrimination policy that was being considered specifically based on these events; and (3) the HOA President suggested that Appellees' actions were because of Appellant's hijab. Based on these facts, we have no trouble concluding that Appellant had a sufficient basis to believe Appellees intended to discriminate against her based on her race, religion, or national origin. While Appellant may not have ultimately adduced evidence sufficient to survive summary judgment, the district court was not entitled to award Appellees attorneys' fees on that basis.

## IV.

The district court abused its discretion in awarding Appellees attorneys' fees. Therefore, the district court's order awarding attorneys' fees is

*VACATED.*

18