**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1963

NAWAL ALI,

        Plaintiff – Appellant,

v.

BC ARCHITECTS ENGINEERS, PLC,

        Defendant – Appellee.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Anthony John Trenga, Senior District Judge.  (1:18-cv-01385-AJT-MSN)

Argued:  December 9, 2025                  Decided:  February 20, 2026

Before DIAZ, Chief Judge, and WYNN and HARRIS, Circuit Judges.

Reversed by published opinion.  Judge Harris wrote the opinion, in which Chief Judge Diaz and Judge Wynn joined.

Arinderjit Dhali, DHALI PLLC, Washington, D.C., for Appellant.  Lars Howard Liebeler, LARS LIEBELER PC, Washington, D.C., for Appellee.

PAMELA HARRIS, Circuit Judge:

This appeal arises out of an employment discrimination lawsuit filed by Nawal Ali against her former employer, BC Architects Engineers, PLC. But it does not concern the merits of Ali's claims – at least not directly. Instead, after granting summary judgment to BC on Ali's final claim, the district court imposed sanctions against Ali's counsel pursuant to 28 U.S.C. § 1927 and ordered him to pay roughly $57,000 in costs. In the district court's view, by the end of discovery Ali's counsel knew or should have known that his client's sole remaining claim was baseless. Because he failed to voluntarily dismiss the case at that point and instead opposed BC's motion for summary judgment, the district court found he had unreasonably and vexatiously multiplied the proceedings in a manner warranting sanctions.

We conclude the district court abused its discretion in imposing sanctions on Ali's counsel and therefore reverse its judgment.

**I.**

We begin by outlining the factual and procedural history of this long-running dispute, which has been the subject of four district court opinions and three prior appeals. Because the merits of Ali's claims are indirectly relevant to this appeal, we first review the motion to dismiss and summary judgment proceedings in this case. We then summarize the sanctions proceedings at issue on appeal.

2

**A.**

Nawal Ali worked as a computer-assisted design drafter at BC Architects Engineers, PLC ("BC"), from March 2015 until April 2016, when BC's two owners terminated her employment. Ali is a Syrian-American Muslim woman and wears a hijab.

After her termination, Ali sued BC for unlawful race discrimination, hostile work environment, retaliation, breach of contract, and a violation of the Fair Labor Standards Act of 1938. She claimed she was passed up for promotions and later demoted because of her race and that another BC employee harassed and discriminated against her because she was Arab. She also alleged that, shortly before she was fired, she reported this discrimination and harassment to BC's two owners and subsequently faced retaliation, including her termination.

The district court dismissed all of Ali's claims. *Ali v. BC Architects Eng'rs, PLC* ("*Ali I*"), 2019 WL 11316659 (E.D. Va. May 1, 2019). On appeal, we affirmed the dismissal as to most of those claims. *Ali v. BC Architects Eng'rs, PLC*, 832 F. App'x 167 (4th Cir. 2020). But a claim for retaliatory termination, we concluded, could go forward, and we reversed and remanded to the district court on that count. *Id.* at 173–74. In particular, we noted that Ali alleged "that her work performance was satisfactory throughout her tenure," and that after she reported discrimination and harassment to BC's owners "she was twice denied reasonable requests to work from home to care for her sick son." *Id.* at 173. These allegations together, we explained, "plausibly stated a retaliatory-termination claim." *Id.*

3

On remand, the case proceeded to discovery. As sometimes happens, the evidence uncovered did not corroborate all of the complaint's allegations – including the two we had highlighted in our earlier opinion. For instance, the evidence called into question Ali's job performance, indicating that she had failed to meet work deadlines on multiple occasions and owed 30 work hours to BC, which she did not make up despite promises to do so. As for Ali's two requests to work from home, BC had granted one and, while denying the other, still permitted Ali to take leave so she could care for her son.

But discovery also revealed new information about the case that was arguably less favorable to BC. First, in interrogatory responses and depositions, BC's owners put forward their reasons for terminating Ali's employment. And as the district court would later acknowledge, there were certain "variations" in these accounts. *See Ali v. BC Architects Eng'rs, PLC* ("*Ali II*"), 2021 WL 2816016, at *9 (E.D. Va. May 28, 2021). Second, deposition testimony revealed that Ali had not been placed on the performance improvement plan ("PIP") contemplated by BC's progressive discipline policy before her termination. According to BC's owners, that was because they were unaware of the company's progressive discipline policy, though it was laid out in the employee handbook.

At the close of discovery, BC moved for summary judgment, and Ali opposed the motion. Analyzing Ali's claim under the familiar *McDonnell Douglas* framework, the district court found that Ali had established a prima facie case of retaliation. *Id.* at *7–8. But, the district court concluded, Ali failed to meet her burden at the "pretext" stage of the analysis because there was no record evidence from which a jury could infer that BC's proffered reasons for her termination were pretexts for retaliation. *Id.* at *8–9.

4

Specifically, the district court rejected Ali's argument that BC's shifting explanations for her termination were evidence of pretext, reasoning that Ali had identified only "relatively minor discrepancies" and that all of BC's explanations fell "within the general category of lack of productivity and insubordination." *Id*.  The district court did not address Ali's argument that a jury also could infer pretext from BC's departure from its progressive discipline policy in connection with her termination.

Having found that Ali failed to rebut BC's legitimate, non-retaliatory reasons for her termination, the district court granted summary judgment to BC. *Id.* at *9.  We affirmed the district court's order in an unpublished per curiam decision.  *Ali v. BC Architects Eng'rs, PLC*, 2022 WL 17985701 (4th Cir. Dec. 29, 2022).

**B.**

After the district court granted summary judgment, BC moved for sanctions against Ali's counsel pursuant to 28 U.S.C. § 1927, which authorizes courts to require "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously" to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."  In support of this motion, BC argued that Ali's claims were frivolous and that her counsel had filed and prosecuted the case without a reasonable basis for doing so.[1]

---

[1] BC also moved for an award of attorneys' fees and costs against Ali herself, pursuant to 42 U.S.C. § 1988(b).  The district court denied this portion of the motion, *see Ali v. BC Architects Eng'rs, PLC* ("*Ali III*"), 2023 WL 3191435, at *5 (E.D. Va. Mar. 31, 2023), and it is not at issue on appeal.

The district court granted BC's motion in part, finding that sanctions against Ali's counsel were warranted under § 1927 for the period beginning when Ali opposed summary judgment and including the final disposition of the summary judgment appeal and the motion for sanctions. *Ali v. BC Architects Eng'rs, PLC* ("*Ali III*"), 2023 WL 3191435, at *7 (E.D. Va. Mar. 31, 2023). "By the end of discovery," the district court found, "[Ali]'s counsel knew, or should have known, that the core allegations the Fourth Circuit found sufficient to plausibly state a retaliation claim were non-existent." *Id.* at *6. And without support for those allegations, the district court reasoned, Ali's retaliation claim was "entirely groundless." *Id.* But Ali's counsel nonetheless opposed summary judgment, which in the district court's view "prolonged and multiplied the[] proceedings with unwarranted filings and argument," and then "continued to multiply the[] proceeding[s]" by appealing the summary judgment decision. *Id.* at *7. The district court reserved decision on the amount of sanctions to be imposed and ordered the parties to submit supplemental briefing on that question. *See id.*[2]

After briefing, the district court ordered Ali's counsel to pay $57,015.82 in attorneys' fees and costs to BC. *Ali v. BC Architects Eng'rs, PLC* ("*Ali IV*"), 2024 WL

---

[2] Ali immediately appealed the order granting sanctions. We dismissed the appeal for lack of jurisdiction, finding that the order was not final because it did not fix the amount of sanctions to be paid. *Ali v. BC Architects Eng'rs, PLC*, 2023 WL 7279894 (4th Cir. Sep. 19, 2023). BC again sought sanctions against Ali's counsel under § 1927, this time for filing a frivolous appeal. We denied that motion. *Id.* at *1.

4492061, at *4 (E.D. Va. Sep. 11, 2024).[3]  Ali timely appealed.

## II.

The district court awarded sanctions against Ali's counsel pursuant to 28 U.S.C. § 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

On appeal, Ali's counsel argues that his conduct in this case was not sanctionable under this statute and, in the alternative, that the district court erred in calculating the amount of sanctions imposed.

We have jurisdiction to consider this appeal because the district court has now entered its final order imposing sanctions. *See Ali IV*, 2024 WL 4492061, at *4.  And we review for abuse of discretion the district court's award of sanctions under 28 U.S.C. § 1927. *Six v. Generations Fed. Credit Union*, 891 F.3d 508, 518–19 (4th Cir. 2018).  In general, we give deference to a district court's assessment of whether a plaintiff's claim was "frivolous, unreasonable, or groundless." *Abdelhalim v. Lewis*, 90 F.4th 265, 272 (4th Cir. 2024) (citation and internal quotation marks omitted).  But we have also explained that

---

[3] BC sought almost $70,000 in sanctions. *Ali IV*, 2024 WL 4492061, at *2.  Because we conclude that no sanctions should have been imposed and reverse on that basis, there is no need to detail how the district court calculated its award of $57,015.82.

"[a] district court abuses its discretion when its reasoning is flawed by erroneous factual or legal premises." *Id.* (citation and internal quotation marks omitted).

After reviewing the record, we conclude that the district court abused its discretion when it found that Ali's opposition to BC's summary judgment motion was "baseless," *see Ali III*, 2023 WL 3191435, at *7, and reverse the award of sanctions on that ground.[4]

**A.**

Ali's counsel begins by arguing that past decisions of this court categorically foreclose the imposition of § 1927 sanctions for the kind of conduct the district court relied on here. We do not read our precedent quite so broadly, and we disagree with Ali's counsel on this point.

Counsel first argues that the sanctions award under § 1927 was erroneous as a matter of law because he did nothing to "multiply the proceedings" in this case. As support, he points to our decision in *DeBauche v. Trani*, 191 F.3d 499 (4th Cir. 1999), where we emphasized that "[t]he unambiguous text of § 1927 aims only at attorneys who *multiply* proceedings" and held "as a matter of law that the filing of a single complaint cannot be held to have multiplied the proceedings unreasonably and vexatiously." *Id.* at 511–12. Because he filed only a complaint and two amended complaints and initiated no other proceedings, Ali's counsel claims, *DeBauche* forecloses the award of § 1927 sanctions against him.

---

[4] The district court also awarded sanctions based on Ali's appeal of its summary judgment order. Although we leave for another day whether the district court had the authority to do so, it follows from our analysis that Ali's appeal was not "groundless" either.

But this case is distinguishable from *DeBauche* and thus not controlled by its outcome. In *DeBauche*, the district court granted a motion to dismiss the complaint and then awarded sanctions based on that filing alone. *See id.* at 504. As we explained, merely *commencing* a case by filing a complaint cannot *multiply* the proceedings within the meaning of § 1927 (although filing a frivolous complaint might be sanctionable under another authority). *See id.* at 511–12.

Here, by contrast, Ali's counsel did more than just commence the case by filing a complaint. He also opposed BC's motion for summary judgment at the close of discovery, which the district court expressly identified as the sanctionable conduct that "prolonged and multiplied the[] proceedings." *Ali III*, 2023 WL 3191435, at *7. As we previously explained in an unpublished opinion, "refusing to voluntarily dismiss [a] case once its lack of merit bec[omes] evident" is "not analogous to the filing of a single faulty complaint that gave rise to our decision in *DeBauche*," and can, under the right circumstances, "protract[] the litigation" in a way that merits sanctions under § 1927. *Salvin v. Am. Nat'l Ins. Co.*, 281 F. App'x 222, 226 (4th Cir. 2008) (per curiam). We find that reasoning persuasive and adopt it here. *DeBauche* does not control this case.

We appreciate, as Ali's counsel argues, that simply responding to a motion filed by the opposing party may not sound like the kind of "multiplication of proceedings" that should be sanctioned under § 1927. And indeed, we expect that most § 1927 sanctions will be reserved for conduct that more affirmatively multiplies the proceedings at issue. *See, e.g., Six*, 891 F.3d at 511 (explaining that the sanctioned attorneys "challenged the authenticity of a loan agreement for two years before revealing that they possessed an

identical copy"). But our court has previously recognized that in some exceptional circumstances, a plaintiff's claim may be revealed as so patently frivolous that failure to voluntarily dismiss the claim, coupled with continued litigation in support of it, could be sanctionable under § 1927. *See, e.g.*, *Fahrenz v. Meadow Farm P'ship*, 850 F.2d 207, 211 n.1 (4th Cir. 1988); *Blue v. U.S. Dep't of the Army*, 914 F.2d 525, 544–45 (4th Cir. 1990); *Salvin*, 281 F. App'x at 226; *Sweetland v. Bank of Am. Corp.*, 241 F. App'x 92, 97 (4th Cir. 2007) (per curiam). We therefore disagree with Ali's counsel that our precedents foreclose § 1927 sanctions in this case as a matter of law.

For related reasons, we also reject counsel's argument that the district court erred as a matter of law by considering the merits of his client's claim in awarding sanctions. It is true that § 1927 "focuses on the conduct of the litigation and not on its merits," *DeBauche*, 191 F.3d at 511, and the "weaknesses of [a plaintiff]'s case" are not by themselves grounds for sanctions under § 1927, *EEOC v. Great Steaks, Inc.*, 667 F.3d 510, 522 (4th Cir. 2012). But at the same time, as described above, our precedents leave open the possibility that § 1927 sanctions may be awarded when counsel continues to litigate a frivolous claim "long after it would have been reasonable and responsible to have dismissed" it, *Blue*, 914 F.2d at 545 (citation and internal quotation marks omitted) – which necessarily requires the court to consider whether a claim in fact qualifies as frivolous, with no "arguable basis either in law or in fact," *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

Here, the district court did not fault Ali's counsel for any ordinary weakness in Ali's claims. Instead, it determined only that Ali's counsel "knew, or should have known" by

10

the end of discovery that Ali's retaliation claim was "entirely groundless," or "baseless." *Ali III*, 2023 WL 3191435, at *6–7. That is the limited inquiry our precedent allows.

**B.**

We agree with Ali's counsel, however, that the district court abused its discretion in applying this standard and finding that the claims advanced in opposition to summary judgment were so "baseless" and "unsubstantiated" that § 1927 sanctions were appropriate. *See id.* at *7. On that ground, we reverse the district court's judgment.

We take as our starting point the earlier district court decision granting summary judgment to BC on Ali's retaliation claim. The district court found, first, that Ali had sufficiently made out a prima facie case of retaliation, based largely on the temporal proximity between her protected activity – alleged complaints of race discrimination – and her termination approximately two weeks later. *Ali II*, 2021 WL 2816016, at *7–8 (applying the *McDonnell Douglas* framework). It turned then to whether Ali had met her burden of presenting evidence that BC's purported non-retaliatory reasons for her termination were pretextual. *Id.* at *8. After considering certain discrepancies in BC's explanations for the termination, the district court concluded that they were too "minor" to serve as proof of pretext, and thus held that Ali had failed to rebut BC's legitimate and non-retaliatory reasons for her termination. *Id.* at *8–9.

On its face, this is in all respects a very ordinary decision, of the sort we regularly review. The district court did, to be sure, rule against Ali, finding her claim to be without merit – a judgment we affirmed on appeal. But as discussed above, that a claim proves to be non-meritorious cannot by itself be grounds for sanctions, *see Great Steaks*, 667 F.3d at

11

522, and it does nothing to distinguish this case from countless other employment discrimination actions in which plaintiffs are ultimately unsuccessful. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421–22 (1978) (warning that merely "because a plaintiff did not ultimately prevail" does not mean the "action must have been unreasonable or without foundation"); *Abdelhalim*, 90 F.4th at 272. What is missing from this seemingly routine merits decision is any indication that Ali's claim was not only unavailing but also so obviously frivolous that its continued pursuit could be deemed an "abuse of court processes" under § 1927. *See DeBauche*, 191 F.3d at 511 (citation and internal quotation marks omitted).

Indeed, in its decision awarding sanctions, the district court did not focus on its ultimate conclusion that Ali failed to produce evidence of pretext to rebut BC's proffered reasons for her termination. Instead, it assessed only two specific allegations in Ali's complaint: that she performed her work to BC's satisfaction, and was denied two reasonable requests to work from home shortly after she engaged in protected activity. *See Ali III*, 2023 WL 3191435, at *6. Those allegations, recall, were cited by this court in reversing the district court's original dismissal of Ali's retaliation claim. In the district court's view, the evidence uncovered in discovery proved these allegations to be "factually false." *Id.* And because these "core" allegations had "preserved [Ali's] retaliation claim on appeal," the district court reasoned, once they were disproved, Ali's retaliation claim became frivolous. *Id.* at *6–7.

We think the district court framed its § 1927 inquiry too narrowly. We can assume the district court was correct that these two specific allegations were disproved by

discovery evidence.  But by then, the case had moved on in other respects, as well:  BC had proffered legitimate and non-retaliatory reasons for Ali's termination, and Ali had pointed to evidence from discovery to show that these reasons were pretextual.[5]  At that point, as the district court recognized in its merits decision, the determinative question became whether Ali, having made a prima facie showing of retaliation, had presented evidence from which a jury could infer that BC's proffered non-retaliatory reasons for her termination were pretextual.  *Id.* at \*8–9; *see Roe v. Marshall Univ. Bd. of Governors*, 145 F.4th 561, 569 (4th Cir. 2025) (explaining the *McDonnell Douglas* framework for proving a retaliation claim).  So for purposes of its sanctions inquiry, the district court should have asked whether Ali had an "arguable basis either in law or in fact," *see Neitzke*, 490 U.S. at 325, for her pretext argument.  And our review of the record shows that Ali put forth at least two non-frivolous arguments to oppose summary judgment on this basis.

The first is that BC offered shifting explanations for Ali's termination.  We have repeatedly explained that when a defendant "offer[s] different justifications at different times" for a challenged action, that fact "in and of itself is evidence of pretext."  *Hollis v.*

---

[5] Ali was free to rely for her argument on new evidence obtained in discovery, as long as that evidence advanced a legal theory of which her complaint gave BC fair notice. *See, e.g.*, *Faulconer v. Centra Health, Inc.*, 808 F. App'x 148, 154 (4th Cir. 2020) ("[A] plaintiff does not have to allege in his complaint every fact on which he will rely at summary judgment," as long as the evidence does not advance "an entirely different theory" that would be "tantamount to a constructive amendment of a complaint."); *Zampierollo-Rheinfeldt v. Ingersoll-Rand de P.R., Inc.*, 999 F.3d 37, 54–55 (1st Cir. 2021) (same).  The evidence from discovery relied on by Ali in opposing summary judgment plainly related to her retaliatory termination claim, which was raised in her complaint and had already been the subject of extensive litigation. *See, e.g.*, *Ali I*, 2019 WL 11316659; *Ali*, 832 F. App'x 167.  BC does not argue otherwise.

13

*Morgan State Univ.*, 153 F.4th 369, 383 (4th Cir. 2025) (internal quotation marks omitted) (quoting *EEOC v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)).  And here, Ali presented evidence marshalled or disclosed during discovery to argue that BC's reasons for her termination had not been entirely consistent.  *See*, *e.g.,* J.A. 362 (BC owner stating that the "primary reason" for termination was Ali's "lack of productivity"); J.A. 661 (Ali stating that she was told she was fired for creating "problems" in the company and bringing her "mother's problems to the company"); *Ali II*, 2021 WL 2816016, at *9 (comparing three reasons for termination offered by BC to Virginia Employment Commission with nine reasons offered in BC's interrogatory answers).  Indeed, the district court acknowledged that BC offered multiple "variations" on its proffered legitimate reasons for Ali's firing, and as noted above, it gave no indication that it viewed Ali's shifting explanations argument as frivolous.  *Ali II*, 2021 WL 2816016, at *9.

To be sure, the district court ultimately concluded these were "variations" on a theme – that each explanation fell within the same "general category of lack of productivity and insubordination," *id.* – and we affirmed that decision, *Ali*, 2022 WL 17985701.  But the line between "minor discrepancies" that do not give rise to an inference of pretext, *Ali II*, 2021 WL 2816016, at *9, and more significant discrepancies that do can be a fine one.  *Compare, e.g.*, *Spatafore v. City of Clarksburg*, 2026 WL 49568, at *4 (4th Cir. Jan. 7, 2026) (finding that "minor inconsistencies" in explanations do not create a triable issue of fact on pretext), *with id.* at *6 (Harris, J., dissenting) (finding that the same inconsistencies give rise to a jury question on pretext).  That a lawyer ends up on the wrong side of this

14

line does not make his position so evidently baseless that he should be sanctioned for pursuing it.

The same is true of Ali's second argument:  that BC's failure to follow its own progressive discipline policy in terminating her was also evidence from which a jury could infer pretext.[6]  BC's employee handbook enumerated this policy, which included the use of a PIP to attempt to resolve certain disciplinary and work performance issues before they resulted in termination.  BC did not dispute that the policy was not followed.  Instead, one of its owners explained that he was unaware of the policy in the employee handbook, but that had he known about it, he would have placed Ali on a PIP before terminating her employment.  The district court described this explanation as "a little curious." J.A. 861.

Deviations from a company policy can be "circumstantial evidence from which pretext and discriminatory intent may be inferred." *Hollis*, 153 F.4th at 383 (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 267 (1977); *Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383 (4th Cir. 2022)).  Again, this argument did not carry the day for Ali at the summary judgment stage.  But that does not make the argument frivolous. *See Christiansburg*, 434 U.S. at 421–22; *Abdelhalim*, 90 F.4th at 272.  Because the district court did not address this argument expressly, we do not have the benefit of its reasoning.  But it appears to us that the record provided Ali's counsel with a plausible, non-

---

[6] As noted above, the district court did not address this argument in its summary judgment decision. *See generally Ali II*, 2021 WL 2816016.  But Ali raised it in her brief in opposition to summary judgment and at the summary judgment motions hearing in front of the district court.

15

frivolous basis for arguing that BC's departure from its progressive discipline policy was evidence of pretext.

For these reasons, we conclude that Ali's counsel had at least two non-frivolous grounds for opposing summary judgment. The district court abused its discretion when it imposed sanctions on Ali's counsel based on the "flawed . . . legal premise[]" that the failure to substantiate two specific allegations in the complaint rendered his opposition to summary judgment so frivolous, *see Abdelhalim*, 90 F.4th at 272 (citation omitted), that it constituted an abuse of process under § 1927. Because we resolve the case on these grounds, we need not and do not reach the parties' arguments about the amount of sanctions imposed.[7]

## III.

For the foregoing reasons, the judgment of the district court is reversed.

_____

[7] More than a month after oral argument in this appeal, BC again filed a motion in our court for additional § 1927 sanctions against Ali's counsel. *See supra* note 2. This time, BC pointed to letters filed with this court by Ali's counsel pursuant to Federal Rule of Appellate Procedure 28(j), arguing that the letters failed to comply with Rule 28(j)'s requirements. We remind litigants that "the proper use of letters filed under Federal Rule of Appellate Procedure 28(j) is to alert the court to new authority that has come to a party's attention *after* briefing or oral argument." *United States v. Heyward*, 42 F.4th 460, 470 n.6 (4th Cir. 2022) (citations and internal quotation marks omitted). But we frequently receive Rule 28(j) letters that at least arguably breach that standard, and we generally do not consider such run-of-the-mill filings sanctionable under § 1927. BC's motion for sanctions is denied.

BC also has filed a motion under Rule 60(a) of the Federal Rules of Civil Procedure, seeking leave to allow the district court to correct a purported error in its calculation of sanctions and increase the amount of its award. Given our reversal of the sanctions imposed, we deny that motion as moot.

*REVERSED*